UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH EVERETT CARBEE, JR.,

                            Plaintiff,

v.                                                      1:17-CV-0051
                                                        (GTS)
COMM'R OF SOC. SEC.,

                            Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

LEGAL AID SOCIETY                            MICHAEL J. TELFER, ESQ.
OF NORTHEASTERN NEW YORK, INC.
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.                  BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Kenneth Everett

Carbee, Jr. ("Plaintiff"), against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14, 17.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted in part and

denied in part, and Defendant's motion for judgment on the pleadings is granted in part and

denied in part.

I.      **RELEVANT BACKGROUND**

A.      **Factual Background**

Plaintiff was born in 1979, making him 36 years old at the amended alleged onset date and 37 years old at the date of the ALJ's decision.  Plaintiff reported obtaining a general equivalency diploma ("GED").  Plaintiff has past work as a stock control clerk, cable TV installer, construction worker I, and fast food worker.  He served in the U.S. Army for approximately seven years and was awarded benefits from the Department of Veterans Affairs in August 2015 based on a 90-percent disability rating.  Generally, Plaintiff alleges disability due to chronic headaches and migraines, neck and shoulder pain, history of fusion surgery in the upper back, traumatic brain injury ("TBI"), vertigo, confusion and loss of memory, arthritis in the neck, back, knees and hands, bulging discs in the lower back, anxiety, posttraumatic stress disorder ("PTSD"), and high blood pressure.

B.      **Procedural History**

Plaintiff applied for Disability Insurance Benefits on October 9, 2015, alleging disability beginning May 1, 2013.  Plaintiff's application was initially denied on December 18, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at two hearings before ALJ Brian LeCours on March 11, 2016, and May 16, 2016.  At the first hearing, Plaintiff appeared without counsel and the ALJ consented to an adjournment to allow Plaintiff to find counsel.  (T. 93-96.)  At the second hearing, Plaintiff amended his alleged onset date from May 1, 2013, to August 17, 2015.  (T. 101.)  On May 31, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 71-89.)[1]

---

[1]      The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein

On December 8, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following eight findings of fact and conclusions of law.  (T. 76-84.)  First, the ALJ found Plaintiff is insured for benefits under Title II until December 31, 2019.  (T. 76.)  Second, the ALJ found that Plaintiff engaged in substantial gainful activity until October 29, 2015.  (*Id.*)  Third, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 29, 2015, and indicated that his remaining findings addressed the period(s) in which Plaintiff did not engage in substantial gainful activity.  (*Id.*)  Fourth, the ALJ found that Plaintiff has severe impairments of degenerative disc disease of the cervical and lumbar spines, while his mental impairments, migraines, history of syncope, gastroesophageal reflux disease ("GERD"), obesity, and arthritis and patellofemoral pain syndrome of both knees are not severe impairments.  (T. 77-78.)  Fifth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 78-79.)  Specifically, the ALJ considered whether Plaintiff's mental impairments, singly or in combination, meet or medically equal the criteria of the 12.00 Listings.  (*Id.*)  Sixth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally stoop, kneel, crouch, and crawl, and climb ramps and stairs, but never able to climb ladders, ropes, and scaffolds. He can occasionally perform overhead reaching (bilateral limitation), must avoid concentrated exposure to noise, defined as Noise Intensity Level 4 and above, and must avoid concentrated

---

will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

exposure to hazardous conditions such as unprotected heights and
dangerous machinery.

(T. 79.)  Seventh, the ALJ found that Plaintiff is capable of performing his past relevant work as

a fast food worker with the limitations in the above RFC.  (T. 82.)  Eighth, and last, the ALJ

found that, in the alternative, Plaintiff can perform other jobs existing in significant numbers in

the national economy including mail clerk, photocopying machine operator, and office helper.

(T. 82-84.)  The ALJ therefore concluded that Plaintiff is not disabled.

     **D.**     **The Parties' Briefings on Their Cross-Motions**

          **1.**     **Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes six arguments in support of his motion for judgment on the

pleadings.  First, Plaintiff argues that evidence submitted to the Appeals Council was new and

material, and that remand is proper because there is a reasonable probability that, if the ALJ had

reviewed this evidence, his decision would have been different.  (Dkt. No. 14, at 9-11 [Pl.'s

Mem. of Law].)  Specifically, Plaintiff argues that this evidence (a) "demonstrates Plaintiff's

impairments were more severe than the evidence before the ALJ revealed," (b) "is consistent

with Dr. Pollock's opinion that supports a finding that Plaintiff is limited to performing less than

the RFC assessment," and (c) "also supports a finding that Plaintiff suffers from the severe

impairments of migraines and degenerative arthritis of bilateral knees."  (*Id*. at 11.)

Second, Plaintiff argues that the Commissioner's substantial gainful activity

determination was legally erroneous because Plaintiff's employment through October 29, 2015,

as a cable TV installer "was not substantial gainful activity as it was performed under special

conditions."  (*Id*. at 11-13.)  Plaintiff also argues his testimony and the report of his previous

supervisor "establish Plaintiff was performing his work under special conditions."  (*Id*. at 12).

Plaintiff cites *Case v. Sullivan*, 810 F. Supp. 52 (W.D.N.Y. 1992), in support of his argument

that a presumption of substantial gainful activity is rebutted by evidence that a plaintiff's performance of his duties was very unsatisfactory. *Case*, 810 F. Supp. at 56-57.

Third, Plaintiff argues that the Commissioner's severity determination was legally erroneous regarding the ALJ's finding that Plaintiff's migraines and degenerative arthritis of the bilateral knees were non-severe impairments. (*Id*. at 13-16.) Specifically, Plaintiff argues that the severity of Plaintiff's degenerative arthritis of the bilateral knees and migraines is supported by substantial evidence. (*Id*.) In support of this argument, Plaintiff cites to treatment notes between April and December 2015, new and material evidence from May 2016, his hearing testimony, and an undated statement from his previous employer. (*Id*.) Plaintiff also argues that, in making his severity determination regarding Plaintiff's bilateral knee condition, the ALJ did not properly weigh the August 2015 opinion of examining physician Charles Pollock, M.D. (*Id*. at 15.)

Fourth, Plaintiff argues that the Commissioner's RFC determination was legally erroneous because the ALJ erred in weighing Dr. Pollock's opinion. (*Id*. at 16-20.) Specifically, Plaintiff argues that great weight should have been afforded to Dr. Pollock's opinion because it is supported by (a) Dr. Pollock's own examination findings, (b) the medical and vocational evidence of record, and (c) the "new and material" evidence submitted to the Appeals Council. (*Id*. at 16-19.) Plaintiff also argues that the ALJ "cherry picked from Dr. Pollock's opinion" because "the ALJ did not weigh [Dr. Pollock's] complete opinion regarding Plaintiff's ability to stand, squat, kneel, and 'work above his head.'" (*Id*. at 19-20.)

Fifth, Plaintiff argues that the Commissioner's credibility determination was legally erroneous. (*Id*. at 20-22.) Specifically, Plaintiff argues that the Commissioner's SSR 16-3p determination was legally erroneous in regard to the ALJ's analysis of Plaintiff's activities of

daily living.  (*Id*. at 21.)  Plaintiff argues that a claimant need not be an invalid to be found

disabled, that his activities as a parent are distinct from performing substantial gainful

employment in the competitive workplace on a regular and continuing basis, and that none of the

activities cited by the ALJ were performed on a regular and continuing basis.  (*Id*. at 20-21 [Pl.'s

Mem. of Law].)

Sixth, and lastly, Plaintiff argues that the Commissioner's Step Four and Step Five

determinations were legally erroneous.  (*Id*. at 22-27.)  Specifically, Plaintiff argues that he is

unable to perform his past relevant work as a fast food worker because this position requires

constant reaching in contrast to the ALJ's RFC assessment that Plaintiff can occasionally

perform overhead reaching bilaterally, and that the findings at Step Four and Step Five were

based on an incomplete hypothetical question.  (*Id*. at 22-24.)  Plaintiff also argues that the ALJ's

decision violated SSR 00-4p because the ALJ failed to resolve conflicts between the vocational

expert's testimony and the Selected Characteristics of Occupations ("SCO") regarding the level

of reaching required by the determined RFC, Plaintiff's past relevant work, and the jobs

identified by the vocational expert ("VE").  (*Id*. at 24-26.)  Finally, Plaintiff argues that there

"are no jobs existing in significant numbers that Plaintiff can perform" because a job identified

by the VE does not exist in significant numbers in the national economy.  (*Id*. at 26-27.)

### 2.     Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes six arguments in support of her motion for judgment on the

pleadings.  First, Defendant argues that evidence submitted to the Appeals Council did not

provide a basis for changing the ALJ's decision.  (Dkt. No. 17, at 7-10 [Def.'s Mem. of Law].)

Specifically, Defendant argues that the "Appeals Council properly considered the evidence that

Plaintiff submitted after the ALJ's decision and concluded that the information provided did not

provide a basis for changing the decision." (*Id*. at 8-10.) Defendant points to the May 2016 treatment note cited by Plaintiff and argues this note also includes unremarkable physical examination findings, signs of decreasing severity of Plaintiff's migraines, and conservative treatment recommendations for shoulder abnormalities. (*Id*. at 9.) Defendant also argues that other post-decision evidence cited by Plaintiff concerns a later period and therefore was not material because it was not relevant to his condition during the time period for which benefits were denied and was not probative. (*Id*. (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).)

Second, Defendant argues that the ALJ correctly found that Plaintiff performed substantial gainful activity through October 29, 2015, and that Plaintiff has failed to establish his work was performed under special conditions. (*Id*. at 10-13.) In support of this argument, Defendant cites the ALJ's acknowledgement of evidence in the record indicating Plaintiff received assistance with some of his job functions at Clearview Broadband and the ALJ's notation that Plaintiff did not report any special conditions in a November 27, 2015, work activity report or at a September 30, 2015, VA treatment visit. (*Id*. at 12-13; T. 76, 274, 1988.)

Third, Defendant argues that the ALJ's Step Two determination was supported by substantial evidence. (*Id*. at 13-15.) In support of the ALJ's severity finding regarding Plaintiff's migraines, Defendant relies on the ALJ's severity analysis indicating a lack of treatment records substantiating the frequency and intensity alleged by Plaintiff. (*Id*.) Defendant points to treatment notes indicating Plaintiff's migraines were managed on medication as well as a lack of examination findings showing permanent residuals from Plaintiff's headaches. (*Id*. at 14.) In support of the ALJ's severity finding regarding Plaintiff's bilateral knee condition, Defendant cites the ALJ's acknowledgement that Plaintiff had a ten-percent service-connected

disability related to his bilateral knee impairment, but that evidence from the relevant period did not support a finding of a severe impairment. (*Id*.) Defendant cites Dr. Pollock's August 2015 opinion which stated he was unable to state without mere speculation whether knee pain, weakness, fatigability, or incoordination limited Plaintiff's functional ability. (*Id*.) Defendant also points to minimal findings on Dr. Pollock's August 2015 examination and on subsequent examination in December 2015. (*Id*.) Defendant argues that, even if this Court were to find error at Step Two, remand would not be warranted, as the ALJ considered Plaintiff's severe and nonsevere impairments after Step Two. (*Id*. at 15.)

Fourth, Defendant argues that the ALJ properly evaluated Dr. Pollack's opinion. (*Id*. at 15-17.) Specifically, Defendant argues that Dr. Pollock's August 2015 examination findings did not reveal significant limitations. (*Id*. at 15-16.) Defendant argues that the RFC assessment for a modified range of light work properly accounts for Dr. Pollock's opinion that Plaintiff could not perform work involving heavy lifting and that the ALJ accommodated Dr. Pollock's opinion regarding severe neck pain with overhead work by limiting Plaintiff to only occasional bilateral overhead reaching. (*Id*. at 16.) Defendant also argues that the ALJ's RFC for light work contemplates Dr. Pollock's note that Plaintiff experienced bilateral knee pain with prolonged standing, squatting, and kneeling. (*Id*.) Defendant argues that the portion of Dr. Pollock's August 2015 opinion regarding migraines did not include objective clinical findings or functional assessments, but rather, Plaintiff's own subjective statements regarding his headache symptoms. (*Id*. at 16-17.)

Fifth, Defendant argues that substantial evidence supports the ALJ's credibility determination. (*Id*. at 17-19.) Specifically, Defendant argues that the ALJ properly considered

Plaintiff's credibility consistent with the regulations including citing to Plaintiff's reported daily activities as indicating a greater level of functioning than claimed at the hearing. (*Id*. at 18.)

Sixth, Defendant argues that the vocational expert's testimony provided substantial evidence to support the ALJ's findings at Step Four and Step Five. (*Id*. at 19-22.) Specifically, Defendant argues that Plaintiff's alleged errors regarding unresolved conflicts between the VE's testimony and the Dictionary of Occupational Titles ("D.O.T.") are unfounded. (*Id*. at 19.) Defendant argues that case law in this Circuit indicates that no conflicts exists between VE testimony and the D.O.T. where the D.O.T. is silent on the restriction at issue. (*Id*.) Defendant argues that if this Court finds that such a conflict did in fact exist, a review of the record indicates that the VE reasonably explained the basis for her testimony. (*Id*. at 20-21.) Defendant argues that overhead reaching is not discussed in the D.O.T. narrative descriptions of the fast food worker position and the three jobs identified by the VE, indicating no inconsistency between the VE's testimony and the D.O.T. (*Id*. at 21-22.) Defendant argues that the hypothetical question to the VE contained all of Plaintiff's credibly established limitations and mirrored the ALJ's RFC. (*Id*. at 22.) Defendant argues that the jobs identified by the VE exist in significant numbers in the national economy. (*Id*.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his
> physical or mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is
> unable to perform substantial gainful activity.  Assuming the
> claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past
> work.  Finally, if the claimant is unable to perform his past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

11

### III.    ANALYSIS

#### A.    Whether the Appeals Council Properly Assessed Post-Decision Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 7-10 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir. 2015) (quoting 20 C.F.R. § 404.970(b)).  "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)).  "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard*, 377 F.3d at 193).  "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id.* (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

In considering Plaintiff's case, the Appeals Council found that the additional evidence at Exhibit 18F (T. 2137-39) did not provide a basis for changing the ALJ's decision.  (T. 2.)  The Appeals Council also noted that the medical records from Albany Stratton VA Medical Center from June 7, 2016, through August 31, 2016, (T. 16-70) were new information about a later time and therefore did not affect the decision regarding whether Plaintiff was disabled beginning on or before May 31, 2016.  (T. 2.)

Exhibit 18F contains a May 2016 primary care note in which Plaintiff was re-establishing care.  (T. 2137-39.)  Plaintiff reported the following: (a) pains that were getting worse in his right shoulder with poor range of motion and decreasing strength, (b) he was not working due to pain, (c) his neck was sore and he had poor range of motion with the pain that was very similar to pain he experienced prior to his previous surgery as well as pain going down his arms, (d) Topamax was not helping with his migraines and he had stopped it, (e) he had been placed on Atenolol, which may have helped some, and might have decreased the duration of migraines from 36 hours to six to 20 hours, (f) Fioricet helped some if he took it quickly, (g) headaches were still as frequent, and (h) he was trying to avoid triggers.  (T. 2137.)  On examination, he had mild tenderness to palpation of the cervical spine, possible positive Spurling's sign bilaterally, and poor range of motion in the right shoulder.  (T. 2138.)  The treatment plan included (a) considering Venlafaxine for mood, body pain, and migraines, (b) ordering an MRI for updated imaging on "cspine disease," (c) ordering physical therapy and an MRI for right shoulder pain, (d) using Tramadol for lower back pain, (e) recommending Plaintiff check with neurology regarding migraines, and (f) following up in four to five months.  (T. 2139.)

The other newly submitted evidence indicates that Plaintiff was referred to physical therapy for pain in the right shoulder and decreased range of motion in May 2016.  (T. 47.)  A right knee brace was prescribed in June 2016.  (T. 53.)  A July 20, 2016, MRI of the right shoulder showed moderate rotator cuff tendinopathy, mild arthritic changes of the glenohumeral joint, degenerative changes of the superior labrum, mild AC joint arthritic changes, small partial tears possible without evidence of a significant tear, and a possible nonspecific superior labral tear.  (T. 16-18.)  Later that month, occupational therapy was suggested for pain in the right shoulder.  (T. 38.)  A July 20, 2016, MRI of the cervical spine showed moderate degenerative

changes of the disc spaces and facet joints most apparent at C3-C4 and C4-C5, postsurgical

changes at C5-C6 and C6-C7, mild disc space narrowing at C4-C5 and C5-C6, moderate

endplate osteophytosis and slight endplate edema at C4-C5, moderate disc osteophyte bulging

with moderate central canal narrowing and left-sided foraminal narrowing at C3-C4, moderate

disc osteophyte bulging with moderate central canal narrowing and bilateral foraminal narrowing

at C4-C5, and postsurgical levels at C5-C6 and C6-C7 demonstrating slight central canal

effacement.  (T. 18-21.)

Plaintiff argues that this evidence is new and material and that remand is proper because

there is a reasonable probability that, if the ALJ had reviewed this evidence, his decision would

have been different.  (Dkt. No. 14, at 9-11 [Pl.'s Mem. of Law].)  This argument is unavailing.

In *Pollard*, the Second Circuit found "that the new evidence was relevant to the time

period for which benefits were denied," even though the new evidence consisted of documents

generated after the ALJ's decision, because the evidence "strongly" suggested that, during the

relevant time period, the claimant's condition was "far more serious than previously thought."

*Pollard*, 377 F.3d at 193.  Such is not the case here.  Not only do the records from Albany

Stratton VAMC concern a later period, they do not strongly suggest that Plaintiff's conditions

were far more serious than at the time of the ALJ's decision.  *Id*.  Nor does the May 2016

treatment note at Exhibit 18F indicate materiality to the extent that there is a reasonable

probability that this new evidence would have influenced the Commissioner to decide Plaintiff's

application differently.  *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard*, 377 F.3d at 193).

Indeed, as argued by Defendant, the physical examination findings at that visit were largely

unremarkable and suggested only that further testing and consideration were warranted.  (T.

2137-39; Dkt. No. 17, at 9 [Def.'s Mem. of Law].)

For these reasons, the Appeals Council did not err when considering the post-decision evidence submitted by Plaintiff and remand is not required on this basis.

**B.    Whether Substantial Evidence Supports the ALJ's Finding Regarding Substantial Gainful Activity Through October 29, 2015**

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14, at 11-13 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At Step One of the sequential evaluation, the ALJ must consider a claimant's work activity during the period of alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is working and the work is substantial gainful activity, a claimant will be found not disabled regardless of his or her age, education, and work experience. 20 C.F.R. § 404.1520(b). If a claimant's work is done under special conditions that take into account an impairment, "such as work done in a sheltered workshop or as a patient in a hospital," the Social Security Administration may find that it does not show the claimant has the ability to do substantial gainful activity:

> Also, if [the claimant is] forced to stop or reduce [their] work because of the removal of special conditions that were related to [their] impairment and essential to [their] work, [the Administration] may find that [their work] does not show that [they] are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.

20 C.F.R. § 404.1573(c). Special conditions include, but are not limited to (1) requiring and receiving special assistance from other employees, (2) being allowed to work irregular hours or take frequent rest periods, (3) being provided with special equipment or assigned work especially suited to an impairment, (4) being able to work only because of specially arranged

circumstances, for example, other persons helped in preparing for or getting to and from work, (5) being permitted to work at a lower standard of productivity or efficiency than other employees, and (6) being given the opportunity to work despite an impairment because of family relationship or past association with an employer. *Id*. Plaintiff bears the burden of establishing he was employed under special conditions such that his work did not constitute substantial gainful activity. *Figueroa-Plumey v. Astrue*, 764 F. Supp. 2d 646, 651 (S.D.N.Y. 2011) (citing 20 C.F.R. § 404.1512(a)).

In *Figueroa-Plumey*, the Court noted that the plaintiff did not provide any details of her previous work "arrangement that could overcome the presumption, raised by her earnings, that she engaged in SGA." *Figueroa-Plumey*, 764 F. Supp. 2d at 651. There, the Court also found substantial evidence in the record to support the Commissioner's determination that Figueroa did not work under special conditions and noted (a) the ALJ's finding that she did not work in an institutional program such as a sheltered workshop or as a patient in a hospital, (b) she did not establish that any of the six considerations described in 20 C.F.R. § 404.1573(c) were met, (c) the plaintiff's testimony did not establish breaks were rest periods designed to accommodate her impairment, (d) the ALJ's determination that these breaks were reflective of less hectic time periods rather than special conditions of employment was supported by the record, (e) her testimony that she would rest her leg on a stool or windowsill while attending to dental patients did not establish that she required special equipment to perform her duties, (f) there was no suggestion that others helped her get to and from work, (g) she did not establish that her rate of patients per day was lower than that of other employees, and (h) her testimony that she was sometimes paid when she did not work did not establish that she was paid because of her employer's concern for her welfare. *Id*. at 651-52 (citing 20 C.F.R. §§ 404.1573(c)(1)-(6)).

16

The ALJ noted that Plaintiff performed full-time work as a cable TV installer for one year and, therefore, this work could not be considered an unsuccessful work attempt. (T. 76.) The ALJ also noted that, "[a]lthough he was described as having certain difficulties performing his job duties without the assistance of other employees, this was not outlined as being a special accommodation." (T. 76.) The ALJ cited the Plaintiff's Work Activity Report indicating monthly earnings well above the significant gainful activity level and in which Plaintiff specifically reported that he did not receive any special conditions or make changes. (T. 76.)

Plaintiff testified that he worked until October 2015 installing cable television when his job gave him the option of being fired or resigning due to missing too many days because of migraines and being in pain from his neck and right shoulder. (T. 101-02, 105, 120.) In the beginning of that job, he occasionally received assistance. (T. 106.) By the end of that job (at the end of August 2015 or beginning of September 2015), he needed more assistance because he was having a hard time lifting objects/tools with his right side and he was given as many jobs as possible where he did not need to use a ladder; if he needed a ladder, he would have to have somebody come and help him if he could not get it off his truck. (T. 106-07.)

In an undated third-party statement from Plaintiff's former supervisor at Clearview Broadband, Inc., Joseph Bronson stated the following: (1) Plaintiff had worked from October 28, 2014, through October 29, 2015; (2) Plaintiff had issues performing certain tasks such as carrying equipment and tools over 35 pounds, including ladders, spools of cable, and other items during a training period of about 3.5 months; (3) Plaintiff continued to have difficulties performing his job duties without the assistance of other employees once he went into the field on his own; (4) Plaintiff called out multiple times during the remainder of his career due to pain issues and migraine headaches, usually one to three times a week; (5) as Plaintiff's disabilities

progressed and worsened, he was given the option to either resign with benefits or be fired without any benefits and he chose to resign; (6) Mr. Bronson witnessed Plaintiff's pain and hardships progressively worsen over the course of his career and found himself and others consistently needing to assist Plaintiff on job sites; and (7) the decision to let Plaintiff go was necessary due to the inconvenience and loss of time and money for the company.  (T. 363.)

Plaintiff argues that his employment as a cable television installer was therefore not substantial gainful activity because it was performed under special conditions, and that Plaintiff's testimony and the report of his former supervisor establish Plaintiff was performing this work under special conditions.  (Dkt. No. 14, at 11-13 [Pl.'s Mem. of Law].)  After considering the evidence of record and the six examples of special conditions given in 20 C.F.R. § 404.1573(c), the Court finds Plaintiff's argument regarding special conditions persuasive.

Mr. Bronson's third-party statement indicates that, for at least part of his employment as a cable television installer, Plaintiff had difficulties performing his job duties without the assistance of other employees, including his supervisor, Mr. Bronson.  20 C.F.R. § 404.1573(c)(1).  Further, given the nature of the help described in Mr. Bronson's statement, it appears that Plaintiff's job performance was unsatisfactory, if not very unsatisfactory, leading his employers to give him a choice between being fired or resigning.  *Case*, 810 F. Supp. at 56-57.  Plaintiff's testimony regarding being given as many jobs as possible where he did not need to use a ladder (T. 107) also suggests that, for at least part of his employment, he was being assigned work especially suited to his impairment.  20 C.F.R. § 404.1573(c)(3).  Therefore, the Court finds that the ALJ's finding at Step One is not supported by substantial evidence.

The Second Circuit has found that, where an ALJ continues the disability evaluation past Step One and considers medical evidence from the entire relevant period, an error in determining

that a claimant performed substantial gainful activity at Step One is harmless.  *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981) (finding that an ALJ's erroneous determination that a claimant's part-time job constituted substantial gainful activity was harmless where there was substantial evidence of other substantial gainful employment that the claimant could perform at Step Five).  For the reasons discussed above, while the ALJ's Step One finding was not supported by substantial evidence, remand is not necessary on this basis alone because the ALJ continued his analysis of Plaintiff's claim through the remainder of the sequential evaluation.  (T. 76-84.)

As discussed below in Part III.F. of this Decision and Order, however, the ALJ did not properly determine that Plaintiff is capable of performing past relevant work as a fast food worker or other existing work in the national economy.  (T. 82-84.)  As a result, it is ordered that, on remand to consider these issues, the Commissioner should re-evaluate whether Plaintiff performed his work as a cable television installer under special conditions.

### C.    Whether the ALJ's Severity Determination Was Supported by Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 13-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations.  *Taylor v. Astrue,*

19

32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' . . . the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  *Taylor*, 32 F.Supp.3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has also indicated that the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, Plaintiff argues that his migraines and degenerative arthritis of the bilateral knees should have been found to be severe impairments because "they cause significant limitations affecting his ability to work and can be expected to last more than 12 months."  (Dkt. No. 14, at

15 [Pl.'s Mem. of Law].)  Plaintiff's arguments regarding his migraines and bilateral knee impairment are unavailing.

The record shows that Plaintiff's migraines and degenerative arthritis of the bilateral knees are medically determinable impairments.  However, the evidence from the period after Plaintiff's amended alleged onset of disability of August 17, 2015, fails to establish these impairments as severe.  Treatment notes from April 2015 detail a resolving knee injury, and knee scans showed mild to moderate degenerative changes bilaterally.  (T. 1834-42.)  Notes from examining physician Dr. Pollock in August 2015 include diagnoses for both migraines and a bilateral knee condition characterized by patellofemoral pain syndrome and degenerative arthritis.  (T. 1720-50.)

At the time of that assessment, Dr. Pollock indicated Plaintiff's headache condition impacted his ability to work in that "he has missed 24 days of work in the last year due to headaches" and "he has severe headaches several times a month."  (T. 1730.)  Regarding Plaintiff's knee condition, Dr. Pollock noted reported functional loss as "pain with prolonged standing, kneeling, [and] squatting."  (T. 1734.)  He observed abnormal range of motion in the bilateral knees not contributing to functional loss.  (T. 1734-35.)  He noted pain on examination causing functional loss and localized tenderness or pain on palpation at the medial joint line in both knees.  (*Id*.)  He noted normal strength in both knees and no evidence of pain with weight bearing, crepitus, muscle atrophy, ankylosis, joint instability, use of an assistive device, or additional functional loss or range of motion after observed repetitive use in either knee.  (T. 1734-42.)  Dr. Pollock indicated that Plaintiff's condition impacted his ability to perform any type of occupational task due to "bilateral knee pain with prolonged standing, squat[t]ing, [and] kneeling."  (T. 1742.)

21

A subsequent treatment note in December 2015 indicates that Plaintiff reported bilateral knee pain and headaches. (T 1966-68.) This note suggests that Plaintiff was seeking employment. (T. 1968.) On examination, Plaintiff had bilateral knee tenderness. (*Id*.) He was assessed with obesity and advised about weight reduction including dietary modification, meal portion control, and regular exercise as tolerated. (*Id*.) He was also assessed with bilateral knee pain likely due to degenerative joint disease ("DJD") along with chronic regional low back pain and right shoulder pain. (*Id*.) He was advised to avoid overuse, given a trial of Etodolac as needed, and prescribed Tramadol as needed for breakthrough pain. (*Id*.) He was also assessed with migraine headache and given a trial of Fioricet as needed and Atenolol daily for prophylaxis. (*Id*.)

Plaintiff notes that Musfiqur R. Sikder, M.D., found mild tenderness above the left knee in November 2015, and that Social Security Administration employee D. Cook noted that Plaintiff walked with a noticeable limp and had trouble sitting down and standing up from the chair both before and after the interview. (T. 252-53, 1720; Dkt. No. 14, at 15 [Pl.'s Mem. of Law].) Indeed, Plaintiff had a syncope episode in November 2015 and physical examination notes cosigned by Dr. Sikder on discharge on November 17, 2015, indicated mild tenderness above the left knee. (T. 1720.) Dr. Sikder also indicated that the range of motion in Plaintiff's extremities was unlimited and he had normal strength throughout. (*Id*.) Plaintiff was noted to ambulate freely upon discharge. (*Id*.) In February 2016, Plaintiff reported feeling better following medication adjustments after the November 2015 syncope episode. (T. 1966.) He denied further case management and indicated that all his needs were met at that time. (*Id*.)

In considering Plaintiff's migraine headaches, the ALJ noted, that, despite reporting in August 2015 that he had missed 24 days of work in the previous year due to headaches, Plaintiff

was working full-time. (T. 77.) The ALJ noted that Plaintiff's report at the December 2015 consultative psychiatric examination suggested an increase in migraine symptomatology, but that there was little to no mention of migraine headaches again after that period. (*Id.*) The ALJ concluded that the "significant lack of treatment notes fail[s] to substantiate the frequency and intensity alleged by the claimant, which is necessary to validate [his] subjective complaints, particularly concerning migraine headaches." (*Id.*) The ALJ also considered migraines as part of Plaintiff's service-connected disability of post-concussive syndrome, his performance of significant gainful activity work after the assignment of service connected disability, and the VA's denial of his entitlement to individual unemployability. (*Id.*)

Plaintiff cites *Zenzel v. Astrue*, 993 F. Supp. 2d 146 (N.D.N.Y. 2012), in support of his argument that "'the ALJ appears not to have considered that Plaintiff might have difficulty maintaining a regular work schedule due to periodic, debilitating headaches.'" *Zenzel*, 993 F. Supp. 2d at 154 (N.D.N.Y. 2012). (Dkt. No. 14, at 15 [Pl.'s Mem. of Law].) However, the ALJ's analysis, as outlined above, clearly indicates that he considered the lack of support for Plaintiff's subjective complaints related to his headaches and specifically points to the significant lack of treatment notes to substantiate the frequency and intensity alleged by Plaintiff.

In considering Plaintiff's bilateral patellofemoral syndrome, the ALJ noted Plaintiff's ten-percent service-connection disability relating to this condition, a normal x-ray of the left knee in April 2015, a lack of flare-ups reported in August 2015, and the lack of evidence of pain with weight bearing or crepitus. (T. 78, 1865.) The ALJ noted that range of motion, "while limited, was documented as not contributing to functional loss and that equal and good strength was found on examination." (T. 78.) He also noted that there were "no pertinent physical findings or

complications relating to [Plaintiff's] knees and [the] examining source documented that there is no functional limitations."  (*Id*.)

Taken in conjunction, Dr. Pollock's treatment notes from August 2015 and the subsequent treatment notes in November 2015, December 2015, and February 2016 fail to establish that Plaintiff's migraines and bilateral knee condition were severe.  In any event, any failure by the ALJ to classify these impairments as severe impairments at Step Two is harmless error in the context of this case.  The ALJ properly considered all the evidence and formulated the RFC based on his assessment of that evidence and his resolution of the inconsistencies between various treatment notes, including the evidence of Plaintiff's migraines and bilateral knee condition.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *White v. Colvin*, 13-CV-0084, 2014 WL 1311993, at *7 (N.D.N.Y. Mar. 31, 2014) ("[I]t is the ALJ's job to properly evaluate the evidence and reconcile any apparent inconsistencies.").

Most importantly, Plaintiff has not shown that the ALJ's analysis of these impairments and the evidence relating to them was unreasonable, or that the exertional, postural, and environmental limitations included in the RFC were not sufficient to account for any functional impact of Plaintiff's migraines and bilateral knee condition as shown by the treatment evidence as a whole.  The ALJ properly considered the evidence related to these impairments, continued through the sequential evaluation, appropriately considered the evidence related to these impairments throughout that evaluation, and accounted for the range of limitations reasonably supported by the evidence in the record.  *Fuimo*, 948 F. Supp. 2d at 269-70.  Remand is not merited on this basis.

**D.     Whether the ALJ Properly Weighed the Opinion Evidence**

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 15-17 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R.

§ 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of

the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

(quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations

where the treating physician's opinion is not entitled to controlling weight, in which case the

ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However,

"[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to

explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc.

Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and

recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing *Atwater v.

Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must

'comprehensively set forth [his] reasons for the weight assigned to a treating physician's

opinion.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  The factors for

considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant.  20

C.F.R. §§ 404.1527(c)(1)-(6).

In considering the opinion evidence of record, the ALJ afforded some weight to

examining physician Dr. Pollock's opinion, noting that the limitation regarding heavy lifting

because of thoracolumbar spine conditions appeared to be consistent with the established RFC.

(T. 81.)  Elsewhere in his RFC analysis, the ALJ noted that there "is little documented evidence

provided within the specific period in question" and that, "in providing an [RFC] in a light most

favorable to the claimant and that is supported by the documented record, a reduction in lifting

and carrying is provided as is some overhead restrictions."  (*Id*.)

The opinion from examining physician Dr. Pollock is contained within treatment records

from the VA Medical Center in Albany for treatment between April and December 2015.  (T.

1712-1852.)  On August 17, 2015, Dr. Pollock indicated he had conducted an in-person

examination of Plaintiff and assessed a lumbosacral strain.  (T. 1720-22.)  Dr. Pollock noted

"reported functional loss" of the thoracolumbar spine in Plaintiff's "own words" as "unable to do

heavy lifting, hurts with prolonged standing."  (T. 1722.)  Dr. Pollock noted abnormal range of

motion, but indicated that the range of motion itself did not contribute to functional loss.  (*Id*.)

On examination, Dr. Pollock noted that forward flexion, extension, bilateral lateral flexion, and

bilateral lateral rotation caused pain.  (T. 1723.)  Dr. Pollock noted that there was no evidence of

pain with weight bearing, localized tenderness, pain on palpation, guarding, muscle spasm,

muscle atrophy, radiculopathy, ankylosis of the spine, neurological abnormalities, intervertebral

disc syndrome of the lumbosacral spine, or the need to use an assistive device.  (T. 1723, 1725-

26.)  Dr. Pollock noted that Plaintiff was able to perform repetitive use testing with at least three

26

repetitions and did not have additional loss of function or range of motion after three repetitions. (T. 1723.)  Dr. Pollock noted normal strength, reflexes, and sensation to light touch as well as negative straight leg raising testing.  (T. 1724-25.)  He noted that Plaintiff's thoracolumbar spine condition impacted his ability to work because he was "unable to do work that involves heavy lifting."  (T. 1727.)

Dr. Pollock also diagnosed migraines and indicated that Plaintiff had "very prostrating and prolonged attacks of migraines/non-migraine pain productive of severe economic inadaptability."  (T. 1727-30.)  Dr. Pollock noted Plaintiff had experienced headaches ever since his concussion and he took Excedrin as needed for this condition.  (T. 1729.)  Dr. Pollock indicated Plaintiff's headache condition impacted his ability to work in that "he has missed 24 days of work in the last year due to headaches" and "he has severe headaches several times a month."  (T. 1730.)

Dr. Pollock also diagnosed intervertebral disc syndrome of the cervical spine with prior neck surgery and noted "reported functional loss" as "neck pain made worse by looking up or lateral rotation."  (T. 1744, 1748-49.)  He observed abnormal range of motion due to diminished flexibility.  (T. 1744-45.)  He indicated no evidence of localized tenderness or pain on palpation, additional loss of function or range of motion after repetitive use, guarding, muscle spasm, abnormal strength testing, abnormal reflexes, abnormal sensation, radiculopathy, ankylosis, neurological abnormalities, or use of assistive devices.  (T. 1745-48.)  He indicated Plaintiff's neck condition impacted his ability to work in that he "has severe neck pain if he must do work above his head."  (T. 1750.)

Dr. Pollock also diagnosed bilateral patellofemoral pain syndrome and bilateral degenerative arthritis.  (T. 1733.)  He noted reported functional loss as "pain with prolonged

27

standing, kneeling, squatting." (T. 1734.)  He observed abnormal range of motion in the bilateral knees not contributing to functional loss. (T. 1734-35.)  He noted pain on examination causing functional loss and localized tenderness or pain on palpation at the medial joint line in both knees. (*Id.*)  He noted normal strength in both knees and no evidence of pain with weight bearing, crepitus, muscle atrophy, ankylosis, joint instability, use of an assistive device, or additional functional loss or range of motion after observed repetitive use in either knee. (T. 1734-42.)  Dr. Pollock indicated that Plaintiff's condition impacted his ability to perform any type of occupational task because he had "bilateral knee pain with prolonged standing, squat[t]ing, kneeling." (T. 1742.)

Setting aside the limitations indicated by Dr. Pollock as *reported* functional loss (T. 1722, 1733, 1744, 1748-49), Dr. Pollock's opinion contains four areas of limitations: (1) Plaintiff was "unable to do work that involves heavy lifting;" (2) he had "missed 24 days of work in the last year due to headaches" and had "severe headaches several times a month;" (3) he had "severe neck pain if he must do work above his head;" and (4) he had "bilateral knee pain with prolonged standing, squat[t]ing, kneeling." (T. 1727, 1730, 1742, 1750.)  While Plaintiff does not appear to argue that Dr. Pollock's opinion should have been given controlling weight as a treating physician, Plaintiff does argue that this opinion should have been afforded great weight based on the factors in 20 C.F.R. §§ 404.1527(c)(1)-(6). (Dkt. No. 14, at 16-20 [Pl.'s Mem. of Law].)  Plaintiff argues that great weight should have been afforded to this opinion because it is supported by Dr. Pollock's own examination findings, the medical and vocational evidence of record, and the "new and material" evidence submitted to the Appeals Council; but Plaintiff fails to indicate how the ALJ's RFC determination for a modified range of light work does not reasonably account for these limitations. (T. 79; Dkt. No. 14, at 16-20 [Pl.'s Mem. of Law].)

Plaintiff's arguments regarding this issue are not persuasive in light of the substantial evidence supporting the ALJ's finding.

In determining Plaintiff's RFC, the ALJ considered the evidence of record and accounted for the range of limitations reasonably supported by the evidence in the record. Specifically, the ALJ noted that Mr. Bronson's third-party statement "outlined the claimant's difficulties as it pertains to him lifting and carrying heavy objects weigh[ing] 35 pounds or more." (T. 81.) The ALJ also noted "little treatment, either physical or psychological, since the claimed amended August 2015 alleged onset date, and the existing medical evidence does not support limitations beyond the established [RFC]." (*Id.*) Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. § 404.1527(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled). Therefore, Plaintiff's argument regarding Dr. Pollock's opinion does not provide a convincing basis for finding that the ALJ failed to properly weigh that opinion.

Plaintiff also argues that the ALJ "cherry picked from Dr. Pollock's opinion" in that "the ALJ did not weigh [Dr. Pollock's] complete opinion regarding Plaintiff's ability to stand, squat, kneel, and 'work above his head.'" (Dkt. No. 14, at 19-20 [Pl.'s Mem. of Law].) While the

ALJ's RFC analysis does not explicitly address these limitations in the same paragraph in which the ALJ indicated Dr. Pollock's opinion was afforded some weight, it is clear from both the ALJ's RFC analysis and determination as a whole that those limitations were properly considered. (T. 79, 81.) The ALJ's earlier summary of the medical evidence noted the August 2015 treatment notes where Dr. Pollock's opinion is contained. (T. 80-81, 1723-24, 1742-49.) The RFC determination contains a limitation to light work (which by definition addresses Plaintiff's ability to stand) as well as a limitation to occasional bilateral overhead reaching. 20 C.F.R. § 404.1567(b).

Further, it is well established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence "to make an RFC finding that is consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (noting also that the ALJ's conclusions do not need to "perfectly correspond" with any of the opinions from medical sources in order to be supported by substantial evidence) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *see also Dirisio v. Comm'r of Soc. Sec.*, 15-CV-1181, 2016 WL 7378930, at *4 (N.D.N.Y. Dec. 20, 2016) ("In formulating the RFC, an ALJ is not required to adhere to the entirety of one medical source's opinion.") (citing *Matta*, 508 F. App'x at 56)); *Wilburn v. Colvin*, 15-CV-0058, 2016 WL 1237789, at *4 (N.D.N.Y. Feb. 29, 2016) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into the RFC where he afforded the opinion "significant but not great weight").

For the above reasons, the ALJ's consideration of Dr. Pollock's opinion is supported by substantial evidence. Further, the evidence as a whole provides substantial support for the RFC finding. Remand is not warranted on this basis.

**E.      Whether the Credibility Finding Is Supported by Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 17-19 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination

as to the credibility of the claimant's allegations.  "'An administrative law judge may properly

reject claims of severe, disabling pain after weighing the objective medical evidence in the

record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her

reasons with sufficient specificity to enable us to decide whether the determination is supported

by substantial evidence.'"  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012)

(quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit

recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and

that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the

court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"

*Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705

F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588,

591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a

claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012)

(citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff argues that the Commissioner's credibility determination was legally erroneous

in regard to the ALJ's analysis of Plaintiff's activities of daily living.  (Dkt. No. 14, at 21 [Pl.'s

Mem. of Law].)  However, the ALJ's citation to Plaintiff's reported daily activities provides a

proper basis for the credibility finding.  *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 271

(N.D.N.Y. 2009) (noting that a claimant's daily activities is one factor the ALJ should consider

in assessing credibility) (citing 20 C.F.R. §§ 416.929(c)(3)(i)-(vii)).  The ALJ noted that Plaintiff

reported tending to his personal needs, overseeing his children in the morning (making sure they

are up, dressed, fed, and on the school bus), using his left arm for most activities (such as putting

on shirts and shaving), preparing simple meals on a regular basis, shopping several times a

month, reading, watching television, playing cards several times per month, doing laundry, and

performing light household chores.  (T. 82.)  Contrary to Plaintiff's suggestions, the ALJ was

permitted to consider whether Plaintiff's daily activities were consistent with the extent of

limitations he alleged; indeed, it is one of the factors the regulations explicitly require the

Agency to consider when assessing credibility.  *Rockwood,* 614 F. Supp. 2d at 271; 20 C.F.R. §§

404.1529(c)(3).  This reason supports the ALJ's credibility finding.

Further, the ALJ did not rely solely on either Plaintiff's reported activities of daily living

or his ability to care for his children, but cited the lack of treatment and the lack of supportive

findings in the medical evidence since the amended alleged onset date in August 2015.  (T. 81-

82.)  These reasons adequately support the adverse credibility finding.  *See Wojciechowski v.*

*Colvin*, 967 F. Supp. 2d 602, 612-13 (N.D.N.Y. 2013) (acknowledging that the ALJ is permitted

to question a claimant's credibility if it is inconsistent with the medical evidence).

Plaintiff also argues that "the ALJ failed to consider the observations of an

Administration employee" and that the ALJ "erroneously failed to mention the employee's

observations in his decision." (Dkt. No. 14, at 21-22 [Pl.'s Mem. of Law] [citing to SSR 16-3p;

*Sweeney v. Colvin*, 13-CV-0703, 2015 WL 11237311, at *11 (D. Conn. Aug. 28, 2015), report

and recommendation adopted by 2015 WL 5684024 (D. Conn. Sept. 28, 2015).])  In *Sweeney*,

the Court found no error where a plaintiff argued that "it was impermissible for the ALJ to

provide <u>any</u> weight to the subjective opinion of a social security employee who observed

plaintiff wearing a backpack 'that must have weighed at least 30 lbs[.]'" and noted that "the ALJ

must consider observations from Agency employees when determining an applicant's disability."

*Sweeney*, 2015 WL 11237311, at *11 (citing SSR 96-7p (superseded by SSR 16-3p)) (emphasis

in original).

Plaintiff's argument here is twofold: (1) the ALJ failed to mention the observations in his

decision and (2) the ALJ failed to consider those observations.  As an initial matter, the ALJ is

not required to discuss every piece of evidence that he or she considered, and failure to discuss

specific evidence does not indicate that an ALJ failed to consider that evidence.  *Coleman v.

Comm'r of Soc. Sec.*, 14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (quoting

*LaRock ex. rel. M.K. v. Astrue*, 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29,

2011)); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005).  The ALJ's

mere failure to mention observations by interviewer D. Cook from November 2015 is thereby

not error meriting remand.

Further, SSR 16-3p indicates that the Commissioner

> will consider any statements in the record noted by agency
> personnel who previously interviewed the individual,
> whether in person or by telephone.  The adjudicator will
> consider any personal observations of the individual in terms
> of how consistent those observations are with the
> individual's statements about his or her symptoms as well as
> with all of the evidence in the file.

SSR 16-3p.  The Court has also previously addressed how observations by Administration

personnel are considered within the ALJ's overall credibility analysis. *See Wright v. Colvin*, 12-

CV-0440, 2013 WL 3777187, at *7-8 (N.D.N.Y. July 17, 2013) (indicating that "[t]he ALJ must do so in the context of his overall evaluation of the credibility of the individual's statements and 'based on a consideration of all the evidence in the case record' rather than basing his conclusions on personal observations alone") (citing SSR 96-7p; *Campbell v. Astrue,* 11-CV-0338, 2012 WL 5178024, at *12 (N.D. Ind. Oct. 17, 2012)).

In *Wright*, the Court further explained that, "[a]lthough by ruling an ALJ should consider the comments by an interviewer, when the objective medical evidence contradict those comments, it is not reasonable to conclude that such lay comments would have persuaded the ALJ or any other adjudicator." *Wright*, 2013 WL 3777187, at *7 (citing *Wier v. Astrue,* 07-CV-1311, 2008 WL 5046420, at *7–8 (W.D. Okla. Nov. 21, 2008)).  "A single and unsubstantial omission by the ALJ of lay observations that are not objective in nature, but rather described external behavior within the control of plaintiff, does not necessitate remand." *Id*. at *8 (citing *Miles v. Astrue*, 05-CV-5892, 2007 WL 764037, at *3 (E.D. Pa. Mar. 9, 2007)).  As indicated above, the ALJ properly considered Plaintiff's reported activities of daily living, the lack of treatment since the amended alleged onset date, and the lack of supportive findings in the medical evidence since the amended alleged onset date when finding Plaintiff's subjective statements not entirely credible.  (T. 81-82.)  The ALJ provided these sufficient reasons for the adverse credibility finding, rendering any omission regarding interviewer Cook's observations harmless error.

For the above reasons, the credibility finding was based on a proper application of the required analysis and is supported by substantial evidence.  Remand is not warranted on this basis.

**F.      Whether the Step Four and Step Five Findings Are Supported by Substantial Evidence**

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 14, at 22-27 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000)) (internal citations omitted).  "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) and SSR 82-62). The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found Plaintiff is capable of performing past relevant work as a fast food worker and, in the alternative, other jobs including mail clerk, photocopying machine operator, and office helper based on the VE's testimony.  (T. 82-84, 126-28.)  Plaintiff argues four errors plague these findings: (1) Plaintiff is unable to perform his past relevant work because this work requires constant reaching while the RFC assessment indicates that he is capable of only occasional bilateral overhead reaching; (2) the VE was asked an incomplete hypothetical question; (3) the ALJ's decision violated SSR 00-4p because of the unresolved conflict between the VE's testimony and the SCO regarding reaching; and (4) there are no jobs that exist in significant numbers that Plaintiff can perform because the number of jobs identified for the position of toll collector do not constitute a significant number.  (Dkt. No. 14, at 22-27 [Pl.'s Mem. of Law].)

The Court will address the alleged errors regarding Plaintiff's ability to perform his past relevant work as well as the other identified jobs and a violation of SSR 00-4p together.  The Court must determine (1) whether there was a conflict between the VE's testimony and the SCO regarding the reaching requirements and (2) whether the ALJ adequately resolved any conflict pursuant to SSR 00-4p.

First, as Plaintiff correctly argues, the SCO does state that "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction" and also indicates that reaching is constant for the position of fast food worker (D.O.T. 311.472-010, 1991 WL 672682) and frequent for mail clerk (D.O.T. 209.687-026, 1991 WL 671813), photocopying machine operator (D.O.T. 207.685-014, 1991 WL 671745), and office helper (D.O.T. 239.567-010, 1991 WL 672232). SELECTED CHARACTERISTICS OF OCCUPATIONS (U.S. Dep't of Labor, 1993); DICTIONARY OF OCCUPATIONAL TITLES (U.S. Dep't of Labor, 4th Ed., rev. 1991).  (Dkt. No. 14, at 22-23 [Pl.'s

Mem. of Law].)  As a result, the Court finds that an apparent conflict exists between the VE's

testimony and the SCO regarding reaching requirements.

Second, in determining whether that conflict was unresolved as to require remand, the

Court looks to the VE's entire testimony at the May 2016 hearing.  (T. 123-33.)  The relevant

hypothetical questions presented to the VE indicated occasional bilateral overhead reaching.  (T.

126-32.)  When asked a subsequent hypothetical question by Plaintiff's attorney regarding

limitations including an inability to reach with the right arm, the VE asked for clarification about

the reaching:

> VE: In which direction?
> ATTY: In the right arm, on a overhead –
> ALJ: I think he means every reaching.
> VE: All reaching?
> ATTY: Yes.
> VE: You just said overhead before, so all reaching?

(T. 130.)  Later, the ALJ specifically asked the VE if her testimony was consistent with the

D.O.T. and she responded as follows:

> A: Yes, except when considering off task time, absenteeism,
> and less than an eight hour workday. That's based upon my
> expertise.
> Q: Okay, and in this respect is your testimony inconsistent
> with the DOT?
> A: No.
> Q: Okay, the DOT doesn't discuss those issues?
> A: Correct.
> Q: Is your testimony consistent with your own experience?
> A: Yes.

(T. 132-33.)  Therefore, though it appears the VE was aware of the difference presented by the

ALJ's hypothetical questions (indicating occasional bilateral overhead reaching) and the one

posed by Plaintiff's attorney (indicating no reaching in any direction with the right arm), her

testimony does not reflect any acknowledgment of the conflict between the ALJ's hypothetical

37

questions that ultimately led to the RFC finding and the requirements of constant or frequent reaching as indicated in the SCO. The ALJ's subsequent question regarding consistency with the D.O.T. similarly does not reflect an inquiry as to the amount of overhead reaching required by Plaintiff's past work as a fast food worker and the other positions identified by the VE, but rather specifically addresses off task time, absenteeism, and an eight-hour workday.

Because there is a material difference between the overhead reaching requirement indicated by the RFC assessment and the SCO's definition/specification of Plaintiff's past work as a fast food worker and the other jobs identified by the VE, the Court finds that a conflict exists between the VE's testimony and the D.O.T. which the ALJ should have resolved before relying on the VE's testimony for making both the Step Four and Step Five findings. *See* SSR 00-4p (stating that, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled"). Specifically, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than the DOT information." *Bevens v. Colvin*, 13-CV-0470, 2015 WL 5750083, at *9 (N.D.N.Y. Sept. 30, 2015). It is apparent that the ALJ did not do so in this case. Because the conflict remained and affected both the ALJ's Step Four and Step Five findings, remand is required for the Commissioner to properly determine whether Plaintiff can perform his past relevant work and/or other jobs existing in significant numbers in the national economy.

The ALJ's "catch-all question" regarding the consistency of the VE's testimony with the D.O.T. (T. 132-33) "is insufficient to satisfy the ALJ's affirmative duty to resolve any conflicts pursuant to SSR 00-4p." *Robles v. Comm'r of Soc. Sec.*, 15-CV-1359, 2016 WL 7048709, at *6

38

(N.D.N.Y. Dec. 5, 2016) (citing *Patti v. Colvin*, 13-CV-1123, 2015 WL 114046, at *6

(W.D.N.Y. Jan. 8, 2015); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)).  Therefore,

remand is required because the Court cannot determine whether substantial evidence supports the

ALJ's Step Four and Step Five findings.  *See Bevens*, 2015 WL 5750083, at *10 (remanding

where "there was an apparent conflict between VE Haller's testimony that Plaintiff could

perform occupations requiring frequent reaching and the ALJ's RFC assessment limiting

Plaintiff to work requiring only occasional reaching"); *accord*, *Spears v. Colvin*, 15-CV-6236,

2016 WL 4973890, at *5 (W.D.N.Y. Sept. 16, 2016); *Patti*, 2015 WL 114046, at *6; *Daragjati v.

Colvin*, 14-CV-2727, 2015 WL 427944, at *10 (E.D.N.Y. Jan. 31, 2015); *Martell v. Comm'r*, 12-

CV-0152, 2013 WL 1429459, at *7 (D. Vt. Mar. 22, 2013).

       Finally, the Court addresses Plaintiff's two other arguments regarding the ALJ's Step

Four and Step Five findings.  (Dkt. No. 14, at 23-24, 26-27 [Pl.'s Mem. of Law].)  Plaintiff's

argument that the VE was asked an incomplete hypothetical question is not persuasive because

the Court has already determined that the ALJ did not err when considering Plaintiff's RFC or

credibility and that the Appeals Council properly assessed the post-decision evidence submitted

by Plaintiff.  Further, Plaintiff's argument that there are no jobs existing in significant numbers

that Plaintiff can perform is only somewhat persuasive.  In light of the conflict between the

positions identified by the VE and the RFC assessment, the Court has already indicated that

remand is required to properly assess Plaintiff's ability to perform his past relevant work and/or

other work.  However, remand for calculation of benefits is not supported as Plaintiff suggests.

(*Id*. at 27.)  As Plaintiff concedes in his argument pertaining to the toll collector position

identified by the VE, the ALJ did not mention this position in his decision and instead relied on

the numbers for the three other identified positions by the VE to find that there were jobs

existing in significant numbers that Plaintiff could perform.  As the Court has indicated above, there was a conflict between the VE's testimony and the SCO which led to erroneous Step Four and Step Five findings.  However, the ALJ did not err procedurally in constructing the hypothetical question or in relying on the numbers provided by the VE for the identified positions.

For the above reasons, the Step Four and Step Five findings are not supported by substantial evidence, and remand is warranted on this basis for proper Step Four and Step Five findings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

Dated: January 9, 2018
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge